**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA | Crim. No.: 03-844 (KSH) |
| v. |  |
| DAVID ALSTON, *Defendant*. | **OPINION** |

## I.      Introduction

Defendant David Alston seeks to reduce his 250-month sentence of imprisonment based on the COVID-19 pandemic and statutory changes in sentencing law.  He also challenges the calculation of his good time credits by the Bureau of Prisons ("BOP").  Having carefully reviewed each of Alston's submissions, the Court concludes that the relief sought must be denied.[1]

## II.      Background

In January 2006, Alston and seventeen other defendants were charged in a 68-count third superseding indictment with racketeering, racketeering conspiracy, and other offenses, including violent crimes in aid of racketeering, firearms offenses, and a heroin distribution conspiracy. (D.E. 229, Third Superseding Indictment; Presentence Report ("PSR") ¶ 8.)  Alston, specifically, was charged with racketeering conspiracy (count 1), racketeering (count 2), attempted murder (count 28), possession, use, and discharge of a firearm for a violent crime (*i.e.*, the attempted murder charged in count 28) (count 44), conspiracy to distribute heroin (count 55), and distribution and possession with intent to distribute crack cocaine (count 58).  The substantive

---

[1] In a separate ruling, the Court has also denied Alston's amended motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (Civ. Action No. 16-3455, Docket Entries 12, 13.)

acts for the racketeering charge against him included two attempted murders, murder, the heroin distribution conspiracy, and distribution and possession with intent to distribute crack cocaine.

Pursuant to a plea agreement with the government, Alston pleaded guilty on September 21, 2006, to count 2 of the third superseding indictment.  The government agreed to dismiss the remaining charges against him, as well as the racketeering act concerning crack cocaine distribution and possession.  (D.E. 502, Plea Agreement; D.E. 624, Judgment.)  Thus, Alston's offense of conviction was racketeering in violation of 18 U.S.C. § 1962(c), based on four substantive acts: two attempted murders, one murder, and the heroin conspiracy.  His custodial sentencing exposure under the sentencing guidelines was 360 months to life.

On April 19, 2007, Alston was sentenced to a 250-month term of incarceration, followed by 5 years of supervised release.  (D.E. 624, Judgment.)  His anticipated release date is December 10, 2024.  (Bureau of Prisons, Inmate Locator, BOP Register No. 26835-050, https://www.bop.gov/inmateloc/ (last visited February 27, 2023)).

On May 28, 2020, Alston filed an application seeking to reduce his sentence under § 404 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), asserting that he is serving a sentence for a crack cocaine offense that qualifies him for resentencing.  (D.E. 888, 894.)[2]  The government countered that Alston did not plead to a covered offense, and that neither the racketeering count he did plead to nor any of the substantive acts qualifies him for relief under the Act.  (D.E. 908.)

Alston filed a supplemental motion in December 2020, reiterating his argument under the First Step Act, and additionally seeking relief under amendment 782 to the U.S. Sentencing Guidelines, which reduced the base offense level (and therefore the corresponding penalties) for

---

[2] D.E. 894 is a duplicate filing of D.E. 888.

certain drug offenses.  (D.E. 916.)  In the same submission, he sought "immediate release" and/or release to home confinement due to the COVID-19 pandemic (*id.* at 1, 9), a request the Court has construed as one seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). The Office of the Federal Public Defender declined representation (D.E. 931), and the government opposed relief (D.E. 933).

Thereafter, Alston filed letters expressly basing his compassionate release request on having asthma (D.E. 938, 940) and citing his personal growth and post-release plans (D.E. 980). In the latter submission, as well as in a subsequent letter (D.E. 975), Alston also sought equitable relief in the form of a reduction in sentence equivalent to the amount of good time credits he believes he should have been awarded based on the Court's adjustment of his sentence that credited 50 months spent in state custody against a 300-month federal sentence.

## III.    Discussion

Alston's multiple arguments seeking a reduction of his sentence, although clearly stated, are unavailing.  First, the exceptional relief of compassionate release is not warranted by the circumstances.  Second, Alston's offense of conviction does not entitle him to relief under the First Step Act; similarly, Amendment 782 to the sentencing guidelines does not apply here. Third, and finally, the Court cannot grant the relief Alston seeks with respect to good time credit.

### A.  Compassionate Release

Alston initially sought immediate release from custody and/or release to home confinement based on the COVID-19 pandemic generally, and later refined his request to focus on the risks posed to him by the combination of the COVID-19 pandemic and a medical condition, asthma.  The Court has construed, and Alston ultimately framed, this request as one

for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which permits defendants to apply

directly to the sentencing court for relief under specified circumstances:

> (A) the court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of the
> Bureau of Prisons to bring a motion on the defendant's behalf or the
> lapse of 30 days from the receipt of such a request by the warden of
> the defendant's facility, whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of probation or supervised
> release with or without conditions that does not exceed the unserved
> portion of the original term of imprisonment), after considering the
> factors set forth in [18 U.S.C.] section 3553(a) to the extent that they
> are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

     Procedurally, before filing a motion with the sentencing court, the defendant must fully

exhaust administrative remedies within the BOP or wait 30 days from the date the facility's

warden receives defendant's request, whichever happens first.  *United States v. Harris*, 973 F.3d

170, 171 (3d Cir. 2020).  The government indicates that on July 30, 2020, the warden of the

facility then housing Alston denied his request for compassionate release and concedes that he

has satisfied the exhaustion requirement.  (D.E. 933, at 4.)

     Substantively, the statute permits compassionate release if (1) extraordinary and

compelling reasons permit the requested reduction in sentence; (2) the reduction is consistent

with applicable policy statements by the U.S. Sentencing Commission; and (3) consideration of

the applicable sentencing factors in 18 U.S.C. § 3553(a) supports the relief sought.  18 U.S.C.

§ 3582(c)(1)(A); *United States v. Andrews*, 12 F.4th 255, 258 (3d Cir. 2021).

1. **Extraordinary and Compelling Reasons**

The phrase "extraordinary and compelling reasons" is not defined by statute. The Court therefore looks to the Sentencing Commission's policy statement at U.S.S.G. § 1B1.13, which although not binding – it refers to motions brought by the BOP director rather than by the defendant and is thus not "applicable" within the letter of the statute – remains an appropriate guide to the meaning of the "amorphous" "extraordinary and compelling" language. *Andrews*, 12 F.4th at 260; *United States v. Jefferson*, 2021 WL 4279626, at *2 (3d Cir. Sept. 21, 2021) ("[I]t is not error for a district court to consider the policy statement in its 'extraordinary and compelling' analysis, even if the policy statement is not ultimately binding on the court.").

The commentary to the policy statement provides, in relevant part, that extraordinary and compelling reasons exist where the defendant is:

(I)     suffering from a serious physical or mental condition;

(II)    suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S. Sent'g Guidelines Manual § 1B1.13 cmt. n.1(A)(ii). (U.S. Sent'g Comm'n 2018).[3]

Alston initially sought release based on the threat of COVID-19 generally. Concerns about the risks COVID-19 presents to prisoners in a general sense are insufficient for relief under

---

[3] The commentary also provides that "extraordinary and compelling reasons" exist based on a defendant's terminal illness; age, where, *inter alia*, he has served at least 10 years or 75% of his term of imprisonment; and in specified family circumstances. *Id.* § 1B1.13 cmt. n.1(A)(i), (B), (C). There is no argument that any of these circumstances apply here. Nor is there any argument for application of the commentary's catchall category, which provides that "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

the statute. *United States v. Barndt*, 2022 WL 17261784, at *2 (3d Cir. Nov. 29, 2022)

(defendant's "generalized concerns are insufficient to constitute extraordinary and compelling

reasons"); *United States v. Somerville*, 463 F. Supp. 3d 585, 596-97 (W.D. Pa. 2020) (the

"'existence of some health risk to every federal prisoner as the result of this global pandemic

does not, without more, provide the sole basis for granting release to each and every prisoner'"

(quoting *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020)).

In its opposition, the government pointed out that Alston had not identified any medical

condition that would put him at increased risk of complications from a COVID-19 infection, and

that although his medical records indicated that he might have asthma, his condition (if extant)

was mild and no need for treatment was reflected in the records. (D.E. 933, at 12.) The

government also pointed out that Alston had received the Pfizer COVID-19 vaccine, assertedly

"precluding" his eligibility for compassionate release. (*Id.* at 13-14.) Alston, in response, then

emphasized his asthma, asserting that he had "been on chronic care since [his] arrest in 2003"

and has breathing complications from a prior COVID-19 infection, necessitating his more

frequent use of an asthma pump. (D.E. 938, at 2.)[4]

---

[4] In that same submission, Alston, then incarcerated at FCI Herlong in California, also cited the high elevation and hazardous air quality due to wildfires. (D.E. 938, at 2.) He has since been transferred to a different facility, USP Yazoo City in Mississippi, rendering these concerns moot. (*See* D.E. 975; *see also* BOP, Inmate Locator, BOP Register No. 26835-050, https://www.bop.gov/inmateloc/ (last visited February 27, 2023)). Alston further asserted that he could not obtain proper medical treatment for his asthma due to lockdowns at Herlong occasioned by the spread of the Delta COVID-19 variant. (D.E. 938, at 2-3; *see also* D.E. 940, at 3.) Based on Alston's most recent submission, which purported to concede "all previous motions" and instead challenged the BOP's good time credits calculations, access to treatment does not appear to be a continuing issue. The Court also observes that USP Yazoo City is currently reporting Level 1 Operations, reflecting minimal modifications to normal operations. (*See* BOP, USP Yazoo City, https://www.bop.gov/locations/institutions/yap/ (last visited February 27, 2023); BOP, COVID-19 Modified Operations Plan & Matrix, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited February 27, 2023)).

Asthma, if moderate or severe, is among the medical conditions that the Centers for

Disease Control list as presenting an increased risk of severe illness from a COVID-19 infection.

CDC, *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-

ncov/need-extra-precautions/people-with-medical-conditions.html (page last updated Feb. 10,

2023) (last visited February 27, 2023).  Assuming *arguendo* that Alston's asthma falls into the

moderate or severe category (although this does not appear to be the case from the record before

the Court), having a listed condition does not automatically satisfy the standard in the policy

statement, which specifies that the condition must "substantially diminish[]" the defendant's

ability to care for himself within the prison setting and be one "from which he . . . is not expected

to recover."  Asthma is consistently rejected as a basis for satisfying this standard.  *See, e.g.*,

*United States v. Hernandez*, 2022 WL 17820248, at *3 (D.N.J. Dec. 19, 2022) (Kugler, J.).

Additionally, Alston's vaccination status reduces the risk of severe illness should he again

contract COVID-19.  *Id.* at *3-4 (discussing effect of vaccination on risks and eligibility for

relief).[5]  The Court cannot conclude that Alston has shown "extraordinary and compelling

reasons" for relief, within the meaning of the policy statement.

---

[5] Although Alston's vaccination status is an important factor, it does not have the dispositive
weight the government attributes to it.  The Third Circuit takes vaccination status into account
and generally affords it great weight but it has not adopted a bright line rule precluding relief for
vaccinated prisoners. *United States v. Estevez-Ulloa*, 2022 WL 1165771, at *2 (3d Cir. Apr. 20,
2022) ("Given vaccine availability, a prisoner *likely* will not be able to prove that his personal
risk of serious illness from COVID-19 is an extraordinary and compelling reason for release
*unless* he can convincingly show that he is 'unable to receive or benefit from a vaccine' or that
he 'remain[s] vulnerable to severe infection, notwithstanding the vaccine.'" (quoting *United
States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022) (emphasis added)); *Jefferson*, 2021 WL
4279626, at *2 (affirming denial of relief to a vaccinated, previously infected defendant because
he had not shown that he was at increased risk of infection and general existence of COVID-19
was insufficiently specific; acknowledging defendant's "fears of reinfection are not completely
unfounded, considering the multitude of unknowns that the Coronavirus pandemic has
unleashed").

Dictionary definitions of the phrase "extraordinary and compelling" support the same

conclusion, as they show how outside the norm a defendant's condition must be to qualify.  For

example, in *Estevez-Ulloa*, the panel stated that "[f]or the prisoner's health to count as an

extraordinary and compelling reason, his health must be so "'[b]eyond what is usual, customary,

regular, or common' that the court is 'oblige[d]' or 'force[d]' to reduce the sentence."  2022 WL

1165771, at *1 (quoting *Extraordinary* (def. 1), *Black's Law Dictionary* (11th ed. 2019); *Compel*

(def. 1), in *Oxford English Dictionary* (2d ed. 1989)) (alterations in original). Similarly, in

*United States v. Somerville*, the court explained:

> The word "extraordinary" is commonly understood to mean "going beyond what
> is usual, regular, or customary," or "exceptional to a very marked extent."
> *Extraordinary*, Merriam-Webster Dictionary (2020); *see also Extraordinary*,
> Black's Law Dictionary (11th ed. 2019) ("Beyond what is usual, customary,
> regular, or common."). The word "compelling" means "forceful," "demanding
> attention," or "convincing." *Compelling*, Merriam-Webster Dictionary (2020); *see
> also Compelling Need*, Black's Law Dictionary (11th ed. 2019) ("A need so great
> that irreparable harm or injustice would result if it is not met."). Thus, at a
> minimum, § 3582(c)(1)(A)(i) requires a justification for release that is both
> ***unusual*** (*i.e.*, unique to the inmate, and beyond the ordinary hardship of prison)
> and ***significant*** (*i.e.*, serious enough to make release appropriate).

*Somerville*, 463 F. Supp. 3d at 595-96.  *Accord Andrews*, 12 F.4th at 260 (appropriate for district

court to consult dictionary definitions to assist in defining "extraordinary and compelling

reasons").  Alston's showing does not rise to this level.  *Estevez-Ulloa*, 2022 WL 1165771, at *1

(burden is on defendant to prove that the risks to his health of remaining incarcerated rises to the

level of an extraordinary and compelling reason)

## 2.  Section 3553(a) Factors

Under 18 U.S.C. § 3553(a), a court must impose a sentence that is "sufficient, but not

greater than necessary" to comply with the purposes of sentencing, including the need for the

sentence to "reflect the seriousness of the offense, to promote respect for the law, and to provide

just punishment for the offense," afford adequate deterrence, protect the public from additional

8

crimes by the defendant, and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D). The court must also consider the "nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," among other factors. *Id.* § 3553(a)(1), (6).

The factors applicable here compel denial of relief. Alston's sentence reflected, and was a function of, the seriousness of his crimes. As part of his guilty plea, he admitted to engaging in acts that included murder and two attempted murders, in addition to an extensive heroin distribution conspiracy. These serious crimes warrant the significant sentence he received, and although Alston has supplied information about ways in which he has grown and developed since his initial incarceration, the harm he inflicted requires he serve his sentence in full.

Relatedly, to the extent Alston sought, at least initially, transfer to home confinement, the Court lacks the authority to review the BOP's discretionary decisions about whether and when an inmate is released to home confinement. *Jefferson*, 2021 WL 4279626, at *3. *Accord United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (BOP has "sole authority" to place prisoner in home confinement (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)).

**B. Remaining Issues**

**1. First Step Act and Amendment 782**

Alston seeks relief under § 404 of the First Step Act. By way of background, in 2010, the Fair Sentencing Act, Pub. L. No. 111-220, 124 Stat. 2372, made changes in sentencing law that aimed to reduce the disparity in sentencing between powder and crack cocaine offenses. *United States v. Birt*, 966 F.3d 257, 259-60 (3d Cir. 2020). Among them was increasing the amount of

9

crack cocaine that would trigger statutory mandatory minimum sentences in a manner that reduced the powder/crack cocaine disparity from 100:1 to 18:1. *Id.* at 260.

Although the changes to sentencing law imposed by the Fair Sentencing Act were not retroactive when they were enacted, subsequent amendments to the sentencing guidelines chipped away at that non-retroactivity. Among them was Amendment 782, which "retroactively reduced by two levels the base offense levels assigned to many drug quantities" by the Drug Quantity Table in § 2D1.1 of the sentencing guidelines. *United States v. Thomas*, 825 F.3d 198, 201 (3d Cir. 2016). Then, in 2018, the passage of the First Step Act made the relevant changes of the Fair Sentencing Act retroactive. *Concepcion v. United States*, 142 S. Ct. 2389, 2396-97 (2022) (explaining that "[t]he First Step Act authorized district courts to 'impose a reduced sentence' for qualifying movants 'as if sections 2 and 3 of the Fair Sentencing Act . . . were in effect at the time the covered offense was committed.'" (quoting Pub. L. 115–391, § 404(b), 132 Stat. 5222)).

Alston argues that both Amendment 782 and the First Step Act warrant the reduction of his sentence. In invoking the First Step Act, he emphasizes the breadth of the information courts may consider on resentencing. But the First Step Act only permits relief where the court sentenced a defendant for a "covered offense," which is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 . . . that was committed before August 3, 2010." Pub. L. No. 115-391, § 404(a)-(b), 132 Stat. 5194 (2018).

Alston was convicted of, and sentenced for, racketeering, in violation of 18 U.S.C. § 1962(c), which is not an offense the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act. *Terry v. United States*, 141 S. Ct. 1858, 1862 (2021) (to determine

whether defendant was sentenced for a "covered offense" and is therefore eligible for relief under the First Step Act, court must "ask whether the Fair Sentencing Act modified the statutory penalties for [the defendant's] offense"). Those sections of the Fair Sentencing Act, in relevant part, modified the penalties for 21 U.S.C. § 841(b)(1)(A)(iii) and § 841(b)(1)(B)(iii)—provisions of the Controlled Substances Act dealing specifically with the sentences for certain substances containing cocaine base. Pub. L. No. 111-220, §§ 2, 3, 124 Stat. 2372 (2010).

The penalties for racketeering are set forth in a different statute, 18 U.S.C. § 1963, which, in subsection (a) provides that "[w]hoever violates any provision of section 1962 . . . shall be fined . . . or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment) . . . ." The Fair Sentencing Act did not modify this statute directly, and although the statute effectively incorporates the penalties of the underlying racketeering act or acts, in this case none of the racketeering acts underlying Alston's conviction involved a "covered offense" and thus did not modify § 1963 indirectly either. The murder and attempted murder acts constituted violations of New Jersey criminal statutes, not any provision of 21 U.S.C. § 841. Although the heroin distribution conspiracy act charged Alston with violating 21 U.S.C. § 841(a)(1) and (b)(1)(A) (as well as 21 U.S.C. § 846), it was for distribution and possession with intent to distribute one kilogram or more of *heroin*, not any quantity of cocaine base – that is, it was for violation of 21 U.S.C. § 841(b)(1)(A)(i), not the subsections modified by the Fair Sentencing Act. The Fair Sentencing Act did not change the statutory penalties for that offense, and it therefore does not open the door to resentencing under the First Step Act. *Terry*, 141 S. Ct. at 1864 (holding that "§ 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses—that is, the offenses that triggered mandatory-minimum penalties"). As the

Third Circuit explained in *Birt*, which rejected an argument by a defendant convicted and
sentenced under 21 U.S.C. § 841(a)(1) and (b)(1)(C) that all defendants convicted under
§ 841(a)(1) are eligible for relief under the First Step Act because some of the penalties
associated with it changed, that interpretation

> would have serious and unintended consequences. Every defendant convicted
> under § 841(a) could seek resentencing regardless of whether the subsection
> under which he was convicted was changed in any way. In fact, a defendant
> convicted of a crime entirely unrelated to crack cocaine would be entitled to
> resentencing. Section 841(b) provides penalties associated with other controlled
> substances besides cocaine base. *So, if we treat § 841(a) as the crime of
> conviction, defendants convicted of, say, heroin offenses, would be entitled to
> resentencing because the penalties in § 841(b) have been modified. That outcome
> would be odd, to say the least.* The Fair Sentencing Act was meant to "restore
> fairness to Federal cocaine sentencing." Pub. L. 111–220, § 2, 124 Stat. 2372,
> 2372 (2010). Allowing defendants convicted of crimes unrelated to cocaine to be
> resentenced does not further the stated purpose.

*Birt*, 966 F.3d at 263 (emphasis added).  Put succinctly, Alston was not convicted of or sentenced
for any crack cocaine offenses, and he is therefore not eligible for relief under the First Step
Act.[6]

Amendment 782 to the sentencing guidelines likewise does not afford Alston relief.   As
explained earlier, this amendment "reduced the offense levels assigned to most drug quantities
under U.S.S.G. § 2D1.1(c) by two levels."  *United States v. Ware*, 641 F. App'x 108, 109 (3d
Cir. 2016) (citing U.S.S.G. § 2D1.1(c) & app. C. supp., amends. 782, 788 (2014)); *see also
Thomas*, 825 F.3d at 201.  Under 18 U.S.C. § 3582(c)(2), a court may modify a term of
imprisonment once imposed

> in the case of a defendant who has been sentenced to a term of imprisonment
> based on a sentencing range that has subsequently been lowered by the
> Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the
> defendant or the Director of the Bureau of Prisons, or on its own motion, . . . after

---

[6] Although Alston's submissions refer at times to charges relating to crack cocaine offenses in
the third superseding indictment, those charges were dismissed as part of his plea agreement with
the government and none were ultimately part of his racketeering conviction.

> considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* § 3582(c)(2).  To be eligible for a reduction in sentence under this statute, (1) the sentence must have been "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and (2) a reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."  *Ware*, 641 F. App'x at 110 (citing 18 U.S.C. § 3582(c)(2); *United States v. Flemming*, 723 F.3d 407, 410 (3d Cir. 2013)). If these prerequisites are met, "it is in the sentencing court's discretion whether to resentence." *Flemming*, 723 F.3d at 410.

Alston's argument fails at the first step because his sentencing range came from a racketeering act, murder, not from a drug offense for which Amendment 782 reduced the offense level and thus the sentencing range.  More specifically, the offense level for each of the two attempted murder racketeering acts was 28, and the heroin distribution conspiracy racketeering act was assigned an offense level of 32, while the murder racketeering act was assigned a level 43.  Therefore, the attempted murder and heroin conspiracy acts were disregarded for purposes of the offense level, and the sentencing range was ultimately determined using the base offense level for murder.  Amendment 782 therefore did not change Alston's sentencing range and is therefore not a basis to grant him a reduction in sentence.  The same result is compelled by the requirement that the requested reduction be "consistent with applicable policy statements issued by the Sentencing Commission":

> A reduction in a sentence is not consistent with the relevant policy statement if the amendment "does not have the effect of lowering the defendant's applicable guideline range." U.S.S.G. § 1B1.10(a)(2)(B). The Guidelines define "applicable guideline range" as "the guideline range that corresponds to the offense level and criminal history category determined pursuant to § 1B1.1(a), which is determined before consideration of any departure provision in the Guidelines Manual."

U.S.S.G. § 1B1.10 cmt. n.1(A) (emphasis added); *see also* U.S.S.G. § 1B1.10 cmt. n.8.

*United States v. Freeman*, 783 F. App'x 164, 167 (3d Cir. 2019).  The guideline range here was 360 months to life, based on a total offense level of 40 (derived from the murder racketeering act and a criminal history category of VI) (PSR ¶ 360).  Reducing the offense level assigned to the heroin conspiracy act would not change this sentencing range, meaning Amendment 782 does not entitle Alston to relief.  *Freeman*, 783 F. App'x at 167 (where amendment would not lower defendant's applicable guideline range, denial of motion was proper).

### 2.   Calculation of Good Time Credits

Finally, Alston contends that the BOP should have awarded him good time credit on a 300-month sentence, rather than a 250-month sentence, because the 250-month sentence imposed by this Court accounted for a 50-month reduction based on a state court sentence that he was serving for aggravated manslaughter.  In substance, he seeks good time credit for the sentence he was serving pursuant to a state court sentence, before he began serving his federal sentence.  Alston argues that the Court, using its equitable powers, should reduce his sentence in an amount equal to the additional amount of good time credit that he believes the BOP should have awarded him.

The relevant statute provides that "a prisoner who is serving a term of imprisonment . . . may receive credit toward the service of the prisoner's sentence, of up to 54 days for each year of the prisoner's sentence imposed by the court, subject to determination by the [BOP] that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations."  18 U.S.C. § 3624(b)(1).  The sentence "imposed by the court" here was a 250-month term of imprisonment (followed by 5 years of supervised release).  (D.E. 624, Judgment.)  As the judgment states, that sentence was "imposed pursuant to U.S.S.G. § 5G1.3(b), and factors

in a 50 month reduction of the intended 25 year sentence based on the defendant's imprisonment on Docket Number 03-06-2253 in New Jersey Superior Court, Essex County, for Aggravated Manslaughter." (Judgment at 2.) Absent that provision of the sentencing guidelines, the 50-month reduction would have been lost to Alston as the BOP does not have authority to make such an adjustment. Reducing Alston's imposed federal sentence further based on good time credits he believes he is owed on the 50 month state sentence that was not imposed in federal court would contravene this careful paradigm. Alston's request is therefore denied.

**IV.    Conclusion**

For the reasons set forth above, Alston's motions seeking a reduction in sentence are denied. An appropriate order will issue.

Dated:  February 27, 2022                        /s/ Katharine S. Hayden
                                                 Katharine S. Hayden, U.S.D.J.